## CHARLESTON.

CROSS *v.* WEST VIRGINIA CENT. & P. R'Y CO.

Submitted September 10, 1892.—Decided December 17, 1892.

1. CORPORATIONS—RAILROAD COMPANIES—JOINT STOCK CORPORATIONS—BY-LAWS.

   The stockholders of the West Virginia Central & Pittsburgh Railway Company have power to pass by-laws prescribing reasonable qualifications of its directors.

2. CORPORATIONS—RAILROAD COMPANIES—JOINT STOCK CORPORATIONS—BY-LAWS.

   A joint-stock corporation has power by by-law to declare that

no person, who is attorney against it in a suit, shall be eligible as a director.

FLOURNOY & PRICE for plaintiff in error cited 97 Am. Dec. 264–268; 79 Va. 124; 2 Kent. Comm. 294, 295; Ang. & Am. Corp. § 335; 2 Green (N. J.) 222; 101 U. S. 71; 1 Whar. 228, 248; Mor. Priv. Corp. § 491; Id. § 494; 29 Minn. 275; 37 Cal. 24; 118 U. S. 356; 12 Pick. 485; 20 W. Va. 360; 3 East 186; 2 Bar. & Ad. 699; 1 Nev. & Man. 286; Say. 262; 28 W. Va. 623, 631–633; 31 W. Va. 806; 28 W. Va. 465.

W. C. CLAYTON and C. W. DAILEY for defendant in error cited 17 W. Va. 638, 640; Id. 612; 35 W. Va. 178; 82 Pa. St. 523; Const. Art. XI, sec. 3; Id. sec. 4; Suth. Stat. Const. § 157; Id. § 217; Id. § 133; Acts 1881, c. 50; 82 Pa. St. 518; 78 Mo. 188; Cook Stock. § 609; 2 Mor. Priv. Corp. § 1050; 25 W. Va. 324; 41 N. J. L. 250; 42 N. J. L. 402; High Ex. Leg. Rem. § 440; Id. § 49; 21 Law, Co. Ed. 945, 947; 113 U. S. 465; 37 Md. 537; 8 W. Va. 74; 4 Wheat. 518; 109 Pa. St. 471; 44 Conn. 318; 3 Johns. Cas. 78; 2 Johns. Cas. 217; 12 Am. Dec. 26, 28 (n,); 58 Am. Dec. 388; 1 Wood R'y Law § 144; Ang. & Am. Corp. 685; 18 Ind. 327; 1 Ark. 513; 3 Ark. 570; 39 N. J. L. 677; High Ex. Leg. Rem. §§ 9, 10; 19 Wend. 37; 1 Den. 388; 9 Wheat. 738; 13 N. E. Rep. 279.

BRANNON, JUDGE:

In March, 1892, W. Irvine Cross presented to the judge of the Circuit Court of Mineral county his petition alleging that he had been elected a director of the West Virginia Central & Pittsburgh Railway Company by a larger vote in stockholders' meeting than W. W. Taylor, but that Taylor had been declared elected, and was then holding said office; and upon the prayer of said petition for a writ of *mandamus* to be directed to said Taylor, commanding him to vacate said office of director, and surrender it to said Cross, and a *mandamus* to said company, commanding it to receive and recognize said Cross as such director, and also to Henry G. Davis, Steven B. Elkins, John A. Hambleton, James G. Blaine, and Thomas B. Davis, the other direc-

tors, commanding them to receive and recognize said Cross as such director, a *mandamus nisi* was awarded. The company filed a return ; and Thomas B. Davis filed a return to said alternative writ of *mandamus*, and the relator, Cross, demurred thereto, and, said demurrers being overruled and no reply of fact being made, the court refused to award a peremptory *mandamus* and dismissed the alternative writ; and Cross brought this writ of error to reverse such decision.

The returns place the refusal to admit Cross as a director upon a by-law of the company providing that no person shall be a director unless he own two hundred shares of stock in the company, and another by-law that no one shall be a director who is engaged as counsel or attorney in any suit or proceeding against the company ; and the returns allege that he is ineligible on both grounds.

This by-law is assaulted as invalid. It is claimed that there is no law authorizing the stockholders to pass it. This company exists under a special act chartering it, passed in 1866, and under an act passed in 1881 amending it, both reserving power to alter or amend the charter ; and under an act passed in 1871 it was given further time to organize ; and it was organized in that year.

An important question here is : Is this company subject to chapter 53 of the Code ? Sections 9 and 10, of said chapter, as it went into force April 1, 1869, read thus :

"(9) Every joint-stock company heretofore organized, and which has commenced its proper corporate business, under special charter or general law, shall remain subject to the laws now in force applicable thereto, unless it accepts the provisions of this chapter, or shall be declared subjected thereto by act of the legislature.

"(10) Every joint-stock company which shall be hereafter organized, or commence its proper corporate business, whether under special charter or general law, or which shall accept the provisions of this chapter or be declared subject thereto by act of the legislature, shall, so far as it it is not otherwise expressly provided, have the rights, powers and privileges, and be subject to the regulations,

restrictions and liabilities specified in this and the preceding chapter."

Under said section 10 this company became subject to chapter 53; and section 49 of that chapter expressly gives the stockholders power to prescribe the qualifications of directors. Why should not the owners of the property and business of a corporation—the stockholders—be allowed to define the qualifications of directors, the governing power of the corporation, except so far as the legislature prescribes?

It may be plausibly argued that so enlarged are the powers and so minute the details of chapter 50, Acts 1881, changing the name of the company, that that act is to be regarded, at least for such a question as this, the charter and law of being of the company; and, if so, it would fall under said chapter 53, making regulations for joint-stock companies, whether incorporated under special charter or general law. I do not, however, deem it necessary to decide this.

It is argued that not section 49, c. 53, applies to this company as to election of directors, but its special charter-acts. Grant this for argument. It is said, then, that this by-law in prescribing said qualification for directors violates the charter-acts. Let us see. Section 1 of both the acts of 1866 and 1881 gives to the stockholders "power and authority to make and pass such by-laws, rules and regulations for the management and government of the affairs of said corporation and its officers, directors and agents as may be deemed necessary or proper, which may also be amended, changed or repealed at any and all regular meetings of the stockholders."

Here is a very comprehensive grant of power. Argument to define its breadth would but cloud, when the letter, spirit and purpose of the grant are plain. Why would a by-law prescribing reasonable qualification of directors be repugnant to this provision? In addition to the foregoing view, it is not going far to say, though not necessary to say except as an additional argument, that section 67, c. 54, Code, brings this company under that chapter, just as much as if it had been formed under that chapter; and then the first section of that chapter provides that compa-

nies incorporated under it shall also be subject to the provisions of chapter 53, so far as applicable, showing a purpose on the part of the legislature to apply the provisions of chapter 53, as well as those of chapter 54, to all joint-stock companies, where applicable.

Now, certainly, section 49, which provides as to the board of directors, how elected and as to qualifications, is applicable in its nature to companies formed under or brought under chapter 54. Section 38 of chapter 54 relates to the same subject, but there is no inconsistency. Section 49, c. 53, gives power to stockholders by by-law to fix the number of directors, the manner of their election and removal, and the mode of filling vacancies. So does section 49, and not in an inconsistent manner. Section 38, c. 54, does not make any provision as to qualifications of directors, further than that they must be stockholders; but section 49, c. 53, gives the stockholders power to prescribe qualifications, requiring, however, that they be stockholders. These two sections can co-exist, to be read as *in pari materia.* Section 49, c. 53, is simply supplementary to section 38 of chapter 54, and supplies a want, wherein said last named section is lacking in a very important respect; that is, it makes provision as to qualifications of directors.

There is confessedly some confusion in our lengthy and elaborate law touching corporations, perhaps necessarily incident to dealing with such a subject, and traceable to amendments from time to time; but it seems to have been the legislative intent to make chapters 53 and 54 apply to all joint-stock companies, so far as applicable; and, this being so, they are to be read and harmonized upon the principles of construction applicable to statutes *in pari materia.* They contain elaborate details in a comprehensive system of statute-law on one single subject—corporations—*State* v. *Cain,* 8 W. Va. 733; *Curran* v. *Owens,* 15 W. Va. 227.

Now, as to that clause of the by-law excluding any one from the directory, who may be employed in suits against the company, we think it is within the power of the stockholders to pass it. Can not the stockholders require that the important functions of directors, which may bring the

company to either prosperity or ruin, shall be performed not by enemies—those hostile in their interests to the company's best interests? Must the attorney against the company be allowed, without any power in the company to prevent it, to sit in the directors' meeting, when they are considering its defence, and have access to all records and papers, get the secrets, and go straight from the meeting and use them to the destruction of the company? Perhaps the vote of one director, who is at the same time interested in a suit involving the property, the business, even the existence of the company, may effectually accomplish the object of that suit. A person can not serve two hostile and adverse masters without detriment to one of them. A judge can not be impartial if personally interested in the cause. No more can a director. Human nature is too weak for this. Take whatever statute provision you please giving power to stockholders to choose directors, and in none will you find any express prohibition against a discretion to select directors having the company's interests at heart; and it would surely be going far to deny by mere implication the existence of such a salutary power. The owners of the franchise and property of the corporation—the stockholders—ought to be accorded this power to defend their own interests. It is self-defence only.

Next, assuming the validity of the clause of the by-law in question excluding such attorney from the directory, we are asked to say that the suit in which the relator, Cross, is engaged as attorney is not such a suit as is contemplated by said by-law, inasmuch as it is really not adverse to the company's interests.

In the first place I remark, that this Court ought not to look with a very critical scrutiny, to say in advance of the decision of the suit, that it is not adverse to the interests of the company, taking away from the directory all right of judgment on that point. But look at the bill in the suit referred to, pending in Baltimore—*Shaw* v. *Henry G. Davis* and others. The West Virginia Central & Pittsburgh Railway Company is a defendant. The contents of the bill need not be further stated than to say, that it alleges, that Henry G. Davis, Thomas B. Davis and Steven B. Elkins

own a majority of the stock of that company, and are directors; that they own stock in and control a corporation called the Piedmont & Cumberland Railway Company, operating a railroad from a terminus of the West Virginia Central & Pittsburgh Railroad to Cumberland; that assets of the West Virginia Central & Pittsburgh Railway Company were used in its construction; that said Henry G. Davis and Thomas B. Davis and Steven B. Elkins, by means of their influence as president and directors of the West Virginia Central & Pittsburgh Railway Company, were about to induce and cause that company to enter into a lease of the Piedmont & Cumberland Railroad, which would be against the interests and to the loss of the West Virginia Central & Pittsburgh Railroad Company; and the bill prayed that said Henry G. and Thomas B. Davis and Steven B. Elkins disclose their interests in the Piedmont & Cumberland Railway Company;—that the latter company discover what money of the former company had been used in its construction;—and that the West Virginia Central & Pittsburgh Railroad Company be enjoined from consummating said lease.

It is said this suit is for the benefit of the West Virginia Central & Pittsburg Railroad Company. That may be in the end. It may be that an accounting to it by the other company will prove beneficial. But it may be also that the prevention of the lease, by which the company would get an outlet from its eastern terminus for its coal and other business, would be highly injurious to it. It may, on the other hand, be that the lease would be a burden upon it. Without all the light how can we say, that the prevention of a lease, which may be beneficial or hurtful, will certainly be hurtful to the company? That depends on facts to be shown by evidence. The Maryland court in charge of the case might determine to the reverse. We can safely say that this Court would be going far to hold that this suit in none of its prayers will prejudice the West Virginia Central & Pittsburg Railroad Company.

It is assigned, but not insisted upon in argument, as error, that the court quashed the return of service as to Henry G. Davis. It showed service by delivery of copy at his

place of business to a person found there, who is manager of his business.  Plainly the return is not good.

AFFIRMED.