**McKEE & COMPANY, a partnership, Plaintiff,**

**v.**

**FIRST NATIONAL BANK OF SAN DIEGO, etc., Defendant.**

**No. 67–9–C.**

United States District Court
S. D. California.

March 10, 1967.

Hervey & Mitchell, San Diego, Cal., for plaintiff.

Procopio, Price & Cory and Harry Hargreaves, San Diego, Cal., for defendants.

## OPINION

JAMES M. CARTER, Chief Judge.

This action for injunction, damages and declaratory relief raises the question as to the reasonableness of bylaws adopted by the defendant, a national banking association.

By supplemental and amended complaint following a denial of an application for a preliminary injunction, plaintiff has incorporated by reference its first cause of action which is directed to the reasonableness of the amended bylaws.

In its second cause of action, plaintiff has alleged that the adoption of the amendments to the bylaws was done for the purpose of excluding plaintiff's nominees from eligibility for membership on defendant's board of directors.

Plaintiff has also alleged that the short amount of time given to plaintiff to find other qualified nominees after the adoption of the amendments was unreasonable and effectively deprived plaintiff of the voting rights incident to the stock possessed by it.

In the third cause of action plaintiff seeks a declaration that its nominees Tooley and Clark were elected at the annual meeting of the board.

## THE FACTS

Defendant is a National Bank with its main office and branches in San Diego county. Plaintiff owns approximately 8% of the outstanding stock of the defendant, with a fair market value of about $2,500,000. Plaintiff desired to vote its stock accumulatively under 12 U.S.C.A. § 61.

Plaintiff shows by affidavit that in December of 1966, there were conversations between an official of plaintiff and an official of the San Diego bank, which resulted in the defendant offering to allow plaintiff to elect one director who was not a resident of San Diego county. Plaintiff's official insisted on two and was told by defendant's official there would be a battle.

On January 4, 1967, defendant amended its bylaws to provide:

1. By Section 2.8 that directors must have been residents of San Diego county for at least one year immediately prior to election.

2. By Section 2.8 that no director should be an attorney for, or connected with other banking institutions, and

3. By Section 1.3 that additional information should be supplied by the stockholder concerning his nominee or nominees. Sections 1.3 and 2.8, as amended, are attached.

On January 5, 1967, plaintiff learned that the bylaws concerning nominations of directors had been amended. On January 6, 1967, the amendments were communicated to plaintiff.

Nominations were to be made by January 11, 1967; the annual meeting and election was set for January 25, 1967. Plaintiff proposed and prepared nomination papers for two nominees, Tooley and Clark; Tooley a resident of Arizona and Clark an attorney residing in Los Angeles county and a member of the law firm of O'Melveny & Meyers in Los Angeles. O'Melveny and Meyers, in the language of plaintiff in its complaint "has and does represent various banks and related organizations doing business in California."

There is no bylaw which prevents the board or its chairman from waiving the requirement that nominations be made by the fixed date of January 11, 1967. No request was made by plaintiff for a waiver of the January 11 requirements; nor did plaintiff attempt to nominate anyone other than Tooley and Clark, who were disqualified under the amendments of January 4, 1967. Plaintiff in substance, "stood pat" on its nominations.

At the annual meeting, the chairman announced that the two nominees were not qualified; shareholders nevertheless cast votes for them in the amount of about 1,000,000 each. The 19 nominees of the management were elected with

votes of approximately 781,000 votes or more each.

■ Our question arises on a motion by defendant for summary judgment. It is hornbook law that the motion cannot be granted if there are factual issues which require a trial.

Counsel for plaintiff has ably summarized by affidavit the claimed issues of fact relied on by the plaintiff. They are:

1. There was intent and purpose on the part of the directors of the defendant to exclude plaintiff's nominees from the Board of Directors.

2. There is lack of any showing that Clark and Tooley, plaintiff's nominees, would not have been loyal directors.

3. That the executive committee of defendant, prior to the amendment of the bylaws had stated they would permit plaintiff to nominate *one* director, not a resident of San Diego county.

4. That defendant was then informed that plaintiff desired to nominate and elect two directors and that defendant's President then stated that a "battle" would ensue.

5. That in the past directors served on the board who were not residents of San Diego county.

6. That defendant is negotiating toward the acquisition or merger with a Bank or Banks which are located outside of San Diego county.

If these issues must be legally resolved, then of course, the defendant's motion for summary judgment must be denied. For the purpose of the motion, we assume that plaintiff can make proof of the facts asserted and that they are true. With the case in this posture, we proceed to decide the motion.

I.

*The Bylaws, as Amended, are Reasonable on their Face.*

"The presumption of law is that a corporation exercises its powers according to law; its by-laws are therefore presumptively valid, and the burden of overthrowing them is upon the party who asserts their invalidity." 18 C.J.S. Corporations § 189, p. 608.

"The validity of a by-law of a corporation is purely a question of law; therefore, whether the by-law is in conflict with the law of the land, or with the charter of the company, or is in a legal sense unreasonable and therefore unlawful, is a question for the court and not for the jury." 18 C.J.S. Corporations § 189, p. 603.

"It is true that the question of whether or not a by-law of a private corporation is void because it is unreasonable, is a question of law for the court. This law, however, has its limitations. Where the reasonableness of a by-law is a mere matter of judgment, and one upon which reasonable minds must necessarily differ, a court would not be warranted in substituting its judgment instead of the judgment of those who are authorized to make by-laws and who have exercised their authority." People ex rel. Wildi v. Ittner, 165 Ill.App. 360, 367 (1911), cited in Fletcher, Cyclopedia Corporations, § 4191, infra.

The bylaws in question clearly are not inconsistent with any federal or state law, and a reading of them raises no question of patent unreasonableness.

(a) *The director qualifications prescribed in Section 2.8 of the Bylaws are reasonable.*

■ A basic proposition, recognized by all authorities, is that every corporation has the inherent right to adopt by-laws "for its internal government, and to regulate the conduct and prescribe the rights and duties of its members towards itself and among themselves in reference to the management of its affairs." Olincy v. Merle Norman Cosmetics, Inc., 200 Cal.App.2d 260, 19 Cal.Rptr. 387 (1962).

"It was the rule at common law that the power to make and adopt by-laws was inherent in every corporation as one of its necessary and inseparable legal incidents. And it is settled law throughout the United States, that, in the absence of positive legislative provisions limiting it, every private corporation

has this inherent power as one of its necessary and inseparable legal incidents, independent of any specific enabling provision in its charter or in general law, such power of self-government being essential to enable the corporation to accomplish the purposes of its creation." Fletcher, Cyclopedia Corporations, § 4171.

Moreover, 12 U.S.C. § 24 (sixth) specifically empowers a national bank "[t]o prescribe, by its board of directors, by-laws not inconsistent with law, regulating the manner in which * * * its directors (are) elected or appointed, its officers appointed * * *" In Rankin v. Tygard, 198 F. 795 (8 Cir. 1912), the court upheld a bylaw of a national bank, adopted pursuant to this general authority, which provided that its president could be elected only from the membership of the board of directors. The court noted that the bylaws were the law of the bank so long as not inconsistent with the federal law and there was no prohibition of such a limitation in the law. Thus, the law does not have to permit, specifically and expressly, the bylaw. It is sufficient that it not be prohibited, so long as it is not inconsistent with other provisions of the law. This case is also significant in upholding a *qualification* to holding office under the general authority to adopt bylaws regulating *appointment* to office.

National banks are subject to all state laws that are not in conflict with the federal statutes and regulations (Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944), Davis v. Elmira Savings Bank, 161 U.S. 275, 283, 16 S.Ct. 502, 40 L.Ed. 700 (1896)). Section 501 of the California Corporations Code specifically provides that bylaws may provide for the qualifications of directors and "[a]ny other proper and lawful regulations." The only relevant limitation under California law is that bylaws be reasonable. 3 Witkin, Summary of Calif.Law, 2329.

12 U.S.C. § 72 sets forth certain residential qualifications for national bank directors, but these qualifications are by their very terms only *minimal.* " * * * *at least* (emphasis added) two-thirds of the directors must have resided * * * within 100 miles of the location of the office of the association, for *at least* one year immediately preceding their election * * * ". National banks are specifically authorized in 12 U.S.C. § 24 to prescribe bylaws "not inconsistent with law."

There is no indication in the statute, cases or legislative history that the statute is or was intended to be exclusive, depriving national banks of their inherent power to adopt other or more restrictive qualifications deemed reasonable.

National banks vary greatly in size and geographical coverage of their business, and what is reasonable for one bank is not necessarily reasonable for all. In adopting limitations applicable to all, Congress, therefore, could not have intended anything more than minimum requirements, and anything adopted beyond the statutory minimum should be tested by a standard of reasonableness.

"A bylaw will, if possible, be construed to be in harmony with a statute dealing with the same subject matter * * *." 12 Cal.Jur.2d 660.

"Other than the qualifications contained in 12 U.S.C. § 72, the Federal banking statutes are silent on the matter of directorial qualifications. *The inherent powers of directors to adopt qualificational bylaws, not inconsistent with law, are far more extensive than the statutory qualifications prescribed for directors.* National banks, although creatures of Federal law, are subject to the operation of general and undiscriminating state laws which do not conflict with Federal law, impair the bank's efficiency, or frustrate their purposes. Accordingly, one must look to the general corporate law for guidance on this subject. (Emphasis added) The authorities on corporate law and the case law are unanimous in support of the proposition that the board of directors, as the governing body of a corporation, has inherent power to

adopt bylaws imposing reasonable qualifications for service on the corporation's board and that bylaws validly adopted have the same force and effect as the corporation's charter and that, since the power to adopt bylaws is vested solely in the directors, shareholder approval adds nothing to their validity." Procedures and Qualifications for Electing National Bank Directors, BANKING, June 1966, by Robert L. Schwind, Regional Counsel, Sixth National Bank Region, The Administrator of National Banks, The Comptroller of the Currency.

(b) *The qualification that a director have resided for at least one year in a county in which defendant maintains a banking office is reasonable.*

It was the judgment of defendant's board of directors (a) that its present strength was largely attributable to its practice of having directors who reside in its service area; (b) that to deviate from this practice would endanger defendant's strength and reputation of being a local bank and thus gamble with defendant's ability to compete successfully and with defendant's very ability to survive; and (c) that the residence qualification in Section 2.8 was necessary to protect defendant's competitive strength and provide defendant with a knowledgeable and functioning board of directors.

"While the reasonableness of bylaws is a question which is open to judicial investigation, before a bylaw will be declared invalid for unreasonableness, the fact that it is unreasonable must clearly appear, and where reasonableness is a mere matter of judgment and one upon which reasonable minds must necessarily differ, the court will ordinarily not feel warranted in substituting its judgment for the judgment of those who were authorized to adopt bylaws and who exercised this authority by adopting the one attacked." Fletcher, Cyclopedia Corporations, § 4191. And see People ex rel. Wildi v. Ittner, quoted above and at length below.

"In the absence of a statute specifying the requirement, a director need not be a resident of the state. However, where the statute provides that the charter or bylaws may prescribe qualifications, any specifications therein on the subject will govern." Handbook for Corporation Directors, M. Feuer, Prentice-Hall, 1965.

In Tu-Vu Drive-In Corp. v. Ashkins, 61 Cal.2d 283, 38 Cal.Rptr. 348, 391 P.2d 828 (1964), the California Supreme Court held that a bylaw restricting the alienation of the corporation's stock was enforceable against a nonconsenting shareholder who acquired his stock prior to the enactment of the bylaw. In reversing the trial court's ruling that the shareholder had a vested right free of the restrictions, the court recognized the legitimate interest of the corporation in "precluding unwanted intrusions by outsiders" and preserving "the integrity of the functioning entity." The court stated that "[s]uch bylaws are necessary for the protection of the corporation and the stockholders against rivals in business and others who might purchase its shares for the purpose of acquiring information which might thereafter be used against the interests of the company." 61 Cal. 2d at 287, 38 Cal.Rptr. at 350, 391 P.2d at 830. The court concluded that the legitimate interests of the corporation outweighed the shareholder's interest, particularly since he was only precluded in his choice of transferees, not from selling his stock at the proper price.

While the court dealt with a close corporation and a different type of bylaw, the case is relevant for its recognition of legitimate corporate interests similar to the ones which the defendant's Bylaws are designed to protect. Moreover, the bank's Bylaws only limit the plaintiff in its choice of nominees; there is no disenfranchisement as alleged. And certainly the restriction on the alienability of shares approved by the court in the *Ashkins* case was a far more drastic and harsh imposition on the shareholder than the director qualifications in our case.

In establishing minimum requirements for all national banks, 12 U.S.C. § 72 actually affirms that resi-

dence is a relevant and important factor. In Concord First National Bank v. Hawkins, 174 U.S. 364, 19 S.Ct. 739, 43 L.Ed. 1007, the court said one of the evident purposes of this enactment was to confine the management of each bank to persons who live in the neighborhood and who may, for that reason, be supposed to know the trustworthiness of those who are to be appointed officers of the bank and the character and financial ability of those who may seek to borrow its money. The residence qualification adopted by defendant bank is thus consistent with both the letter and the purpose of the statute.

(c) *The qualification that a director not be a director, officer, employee, agent, nominee, or attorney of any other banking corporation, affiliate or subsidiary thereof, or bank holding company engaged in business in California is reasonable.*

██ A corporation may require that directors not have interests which may conflict with the interests of the corporation. Paragraph 4215 of the Rulings of the Comptroller prohibits, without express prior approval of the Board of Governors of the Federal Reserve System, a person from being a director of a member bank if he is also a director of a bank in the same community or an adjoining one. A bank director has access to a great deal of information concerning the business and plans of a bank which would likely be injurious to the bank if known to another bank, and it was reasonable and prudent to enlarge this minimum disqualification to include any director, officer, employee, agent, nominee, or attorney of any other bank in California. The *Ashkins* case, supra, specifically recognizes protection against rivals and others who *might* acquire information which *might* be used against the interests of the corporation as a legitimate object of by-law protection. With respect to attorneys or persons associated with a firm which is attorney for another bank, in addition to the direct conflict or potential conflict of interest, there is also the danger of inadvertent leakage of confidential information through casual office discussions or accessibility of files. Defendant's directors determined that its welfare was best protected if this opportunity for conflicting loyalties and potential misuse and leakage of confidential information was foreclosed.

While plaintiff has not specifically questioned the validity of sub-paragraphs (b) and (d) of Section 2.8 of the Bylaws, these also are for the purpose of assuring that a director has no conflicting interest or loyalty in favor of another bank; and subparagraph (e) simply paraphrases 12 U.S.C. § 78 which disqualifies securities dealers from being a director of a bank which is a member of the Federal Reserve System. Defendant is such a member and these subparagraphs are manifestly fair and reasonable.

"Although the case law on the subject of qualificational bylaws is not extensive, a few cases exist to illustrate the type of qualificational bylaws which the courts have held not to be unreasonable. Below are listed qualificational bylaws upheld by the courts:

(1) A director shall not be directly or indirectly interested as a stockholder in any other firm, company, or association which competes with the subject corporation.

(2) A director shall not be the immediate member of the family of any stockholder in any other firm, company, or association which competes with the subject corporation.

(3) A director shall not be an officer, agent, employee, attorney, or trustee in any other firm, company, or association which competes with the subject corporation.

(4) A director shall be of good moral character as an essential qualification to holding office.

(5) No person who is an attorney against the corporation in a law suit is eligible for service on the board."

Procedures and Qualifications for Electing National Bank Directors, Schwind (cited above)

" * * * Thus, it is competent for the bylaws to prescribe the qualifications required of directors, as that they shall not be or have any interest adversely to the corporation. * * * " Fletcher, Cyclopedia Corporations, § 4210.

Defendant's Bylaws are similar to those in People ex rel. Wildi v. Ittner, 165 Ill.App. 360 (1911), the leading case on the subject. In addition to stock ownership for a specified period, the bylaws in the *Ittner* case provided that a director shall not be directly or indirectly interested as a stockholder in any other like firm, company, or association, or the immediate member of the family of such stockholder, and he shall not be an officer, agent, employee, attorney or trustee in any such firm, company or association. A shareholder owning one-third of the stock nominated and voted for himself and his wife as two of the five directors pursuant to the cumulative voting privilege in Illinois. Although they each received more votes than any other candidate, they were declared disqualified because the husband owned stock in and was president and director of a competing company. The wife was further disqualified for not owning stock for the requisite six months prior to election. The lower court's determination that the bylaws were void was reversed.

Addressing itself to the appellee's contention that the bylaws conflicted with the statutory right of cumulative voting, the court stated that the right to vote their stock for directors is not taken away, the only limitation being that they must vote for persons qualified to hold the office. The court noted that the same limitation may be said to be placed on every qualified voter in the state in all state and municipal elections where qualifications for officers are specified in the statutes or ordinances.

The court's discussion of the question of the reasonableness of the bylaws is quoted at length:

" * * * It is true that the question of whether or not a by-law of a private corporation is void because it is unreasonable, is a question of law for the court. This law, however, has its limitations. Where the reasonableness of a by-law is a mere matter of judgment, and one upon which reasonable minds must necessarily differ, a court would not be warranted in substituting its judgment instead of the judgment of those who are authorized to make by-laws and who have exercised their authority. The rule is well expressed in Thompson on Corporations, Sec. 1002 (2nd Ed.) in this language: 'Before a court will declare a by-law unreasonable, its unreasonableness must clearly appear; and in such cases the courts will not look closely into mere matters of judgment, where there may be a reasonable difference of opinion.' See also Green v. Board of Trade, 174 Ill. 585 [51 N.E. 599, 49 L.R.A. 365] * * * As to the * * * portion of the by-law that he shall not be directly or indirectly interested as a stockholder in any other like firm, company or association, or the immediate member of the family of such stockholder, we think that the ruling of the court in the case of Cross v. [West Virginia Cent. & P.] R.R. Co., 37 West Va. 342 [16 S.E. 587, 18 L.R.A. 582], and what was said by the court therein, is very much in point here. The by-law of the railroad company provided that no person who was attorney against the company, should be eligible as a director. The court in its opinion in that case said: 'We think it within the power of the stockholders to pass it * * * A person cannot serve two hostile and adverse masters without detriment to one of them. A judge cannot be impartial if personally interested in the cause. No more can a director. Human nature is too weak for this. Take whatever statute provision you please giving power to stockholders to choose directors, and in none will you find any express prohibition against a discretion to select directors having the company's interest at heart, and it would simply be going far to deny by mere implication the existence of such a salutary power.'

" * * * If the by-law is to be held reasonable in disqualifying a stockholder in a competing company from being a director, the same reasoning would apply to disqualify the wife and immediate member of the family of such stockholder, on account of the supposed interest of the wife in her husband's affairs, and his supposed influence over her. It is perhaps true that such stockholders ought not to be condemned as selfish and dangerous to the best interest of the corporation until tried and tested. So it is also true that we cannot condemn as selfish and dangerous and unreasonable the action of the board in passing the by-law. The strife over the matter of control in this corporation as in many others is perhaps carried on not altogether in the spirit of brotherly love and affection. The only test that we can apply is as to whether or not the action of the board is authorized and sanctioned by law. * * * " 165 Ill. App. at 367–369.

(d) *The requirement is reasonable that a shareholder, when nominating a candidate for election as a director in opposition to the management's slate, furnish information showing that the nominee meets the qualifications of a director, and provide the information required in Schedule C of Section 11.5 of the Regulations of the Comptroller.*

■■■ Section 17.1 of the Regulations (12 CFR 17.1) sets out a permissive procedure for shareholder nominations which was included in Section 1.3 of the Bylaws prior to the recent amendment. This procedure included the submission of certain information. The present Bylaws retain this procedure but augment it with the requirement that the shareholder also show that the nominee meets the qualifications provided for in Section 2.8 of the Bylaws and, in addition, provide the information required in Schedule C of Section 11.5 of the Regulations (12 CFR 11.5).

It was the judgment of defendant's board of directors to require more information than the permissive amount under Section 17.1. This was proper and reasonable. Section 11.5 requires Schedule C information to be supplied whenever there is any solicitation for proxy in opposition to the management's solicitation of proxies. "Solicitation" is defined in Section 11.2 as any "communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy." When opposition candidates are nominated by a shareholder it is reasonable to expect that some solicitation will be made by the shareholder to obtain votes for his candidate, and it is certainly not unreasonable to require that Schedule C information accompany the nomination.

■■■ Such information is a reasonable requirement even where no solicitations are made since the bank's management has the duty to ascertain and disclose to shareholders any facts which may affect a nominee's loyalty to the bank. A bank is a quasi-public institution, and if a minority shareholder wishes to place a representative on its board, other shareholders who are asked to vote on the nominee should know the background and interest of the nominating shareholder and his nominee. In short, this bylaw does no more than establish a policy of full disclosure which certainly can be only to the best interests of the bank.

" * * * the board of directors of a national bank may adopt procedures for nominating and electing members of the board. Accordingly, many national banks have incorporated into their bylaws Regulation 17 of the Comptroller of the Currency (12 CFR 17) which requires that advance notice be given to the banks and to the Comptroller of the Currency of all nominations other than those put forth by existing management. The effect of such a procedural bylaw is to eliminate the element of surprise employed by many minority shareholders in voting themselves on the board by requiring such shareholder to give management advance notice and other information.

Complementary therewith, to avoid some of the unfortunate circumstances surrounding the solicitation of proxies by minority shareholders and possible election contests or proxy fights, the adoption of appropriate bylaws containing provisions setting forth procedures to be followed, such as contained in 12 CFR 11.5, might also be beneficial." Procedures and Qualifications for Electing National Bank Directors, Schwind (cited above).

The chairman of the meeting is not given "unbridled discretion," as contended by plaintiff, to determine whether the information requirement has been satisfied and to refuse to accept nominees. Prior to amendment, the Bylaws contained the permissive provision authorized in Section 17.1 of the Regulations which permitted the chairman to bar nominees if the provisions had not been complied with. This authority would have been inherent in the absence of any provision. The wording in the present Bylaw was adopted not to grant the chairman any additional discretion but to set forth the chairman's *duty* so to declare to the meeting if he determines that the provisions have not been complied with. Otherwise, a shareholder might vote for a nominee not realizing the nominee had been disqualified.

We conclude and hold that the amended bylaws were reasonable on their face.

## II.

*If the bylaws are reasonable, the purpose, intent or motive behind their adoption is not a matter of judicial inquiry.*

Little law is found on this issue. Apparently it has been generally assumed that the issue is the reasonableness of the bylaw and not the reason that lead to its adoption.

Our research has developed the case of Stockholders Committee for Better Management, etc. v. Erie Tech. Prod., Inc., (D.C.W.D.Pa.1965), 248 F.Supp. 380, at 389:

" * * * Plaintiffs have stressed the 'motive' with which said acts were done as giving support to a cause of action against acts otherwise legal. Plaintiffs use 'motive' in the broad sense of 'purpose' and allege a course of action the purpose of which is to exclude plaintiffs from representation. We have throughout this opinion taken this purpose as established by the allegations, yet we find no support for plaintiffs' claims. The cases all indicate that the purpose of motives are immaterial. See Janney v. Philadelphia Transportation Co. [387 Pa. 282, 128 A.2d 76] (supra); Hepps v. A. M. Byers Co., (supra); Humphrys v. Winous Co. [165 Ohio St. 45, 133 N.E. 2d 780] (supra). Even where a director's motive is suspect, the approval of his action by a majority of the shareholders removes this possible objection. Smith v. Brown-Borhek Co., 414 Pa. 325, 200 A.2d 398 (1964)."

In that case the bylaw in question was obviously adopted in order to dilute the effectiveness of plaintiff minority shareholders' votes under Pennsylvania law which provided for cumulative voting. The court concluded:

"The plaintiffs have of their own free will chosen to join the fortunes of this particular corporate expedition. They are not captive passengers, they can disembark at any time. They anticipated that they might in time garner enough support to secure election of their candidate to the Board of Directors. Nevertheless, they are charged with the knowledge that the By-laws might be amended to make that prospect more difficult. That result has come about, but they have not been deprived of any legal right. Their positions are the same as any other stockholder in the corporation and they are entitled only to the same legal protection as any other stockholder."

Absent other authorities, we have groped for analogies that might assist. We think of city ordinances, and state or federal statutes in the governmental field.

(a) In considering the constitutionality of statutes the Supreme Court in Nebbia v. People of State of New York, (1934) 291 U.S. 502, at page 525, 54 S.Ct. 505–510, 78 L.Ed. 940, has repeated an old principle: " * * * the guarantee of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained * * * ".

(b) *The National Firearms Act of June 26, 1934.*

When Congress passed the National Firearms Act, Act of June 26,.1934, Ch. 757; 48 Stat. 1237; presently 26 U.S.C.A. 5801 et seq., imposing a tax on dealers in firearms and on the traffic in firearms, the purpose and intent of Congress was without question directed to the Dillingers, Ma Barkers and gangsters who were plaguing the country with crimes of violence.

In Sonzinsky v. United States, (1937), 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772, attack was made on the act on the ground "that Congress had no intention of framing a law that would procure any revenue for the Government. * * * " The "[p]etitioner * * * insists that the present levy is not a true tax, but a penalty imposed for the purpose of suppressing traffic in a certain noxious type of firearms". (p. 512, 57 S.Ct. p. 555).

The court said:

"Inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon is beyond the competency of courts." (p. 513, 57 S.Ct. p. 556).

(c) *Suppositious case*

Suppose that X is suggested by shareholders as a prospective Director. Suppose the Board of Directors discovers he is connected with gangster groups, has a most obnoxious personality, has no knowledge of banking and they suspect he is the opening wedge for the underworld to take over the bank. Suppose the Board discovers he also has been previously convicted of a felony.

The Board of Directors then amend the bylaws and provide that no person convicted of a felony is eligible to serve on the Board.

On a subsequent judicial inquiry, can there be any doubt that the question would be whether the new bylaw was reasonable in excluding a felon? Or would the question be the motives and intent of the Board to eliminate a particular individual?

*Negotiations with Other Banks*

Plaintiff contends that facts will show that the defendant was negotiating for acquisition of or merger with a bank or banks outside the county of San Diego. We assume these facts for the purpose of our decision. This goes to the question of defendant's intent or purpose, and is not a matter proper for judicial inquiry.

We conclude that our inquiry is limited to the scope and extent of the bylaws, and whether they are reasonable [and whether they are reasonably applied as discussed hereafter] and not whether they were aimed at one or more particular nominees or directors of the defendant bank. Assuming that the intent and purpose of the directors was to eliminate Tooley and Clark, the question is whether the bylaws were as a matter of law reasonable, and we hold they were.

### III.

*Were the bylaws unreasonably applied?*

We have held that the bylaws were reasonable as a matter of law. It is still possible the bylaws could be unreasonably applied. Thus, though the bylaws prohibited a non resident of San Diego county from being a director, suppose the directors had elected one or more non resident directors while refusing to hold that plaintiff's nominees were qualified.

(a) *Generally*

Yick Wo v. Hopkins, (1886), 118 U.S. 356, 68 S.Ct. 1064, 30 L.Ed. 220.

In 1880 the City of San Francisco enacted an ordinance regulating laundries.

The ordinance on its face appeared to apply to all laundrymen. But Yick Wo, a Chinese laundryman attacked the ordinance on the ground that, although apparently reasonable and constitutional on its face, it had been unconstitutionally applied only to Chinese laundrymen and not to other laundrymen.

The Supreme Court reversed the conviction on the ground, not that the statute was unconstitutional on its face, but that the proof showed it had been unconstitutionally applied.

Thus, Yick Wo, who would have left the world unnoticed, achieved immortality because of Yick Wo v. Hopkins, and his case will be cited again and again.

The court said at 118 U.S. 373, 6 S.Ct. 1073:

" * * * Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and *illegal discriminations between persons in similar circumstances*, material to their rights, the denial of equal justice is still within the prohibition of the constitution. * * * " (Emphasis added).

■ There is utterly no showing of any such unreasonable application or threat of application of the bylaws or any such discrimination or threat of discrimination. So far as the record shows, the new bylaws will be applied fairly and reasonably and without discrimination as to any party.

We find no ground for relief on this ground.

(b) *Were the bylaws unreasonably applied in that there was insufficient time available to renominate directors who could qualify under the Amended Bylaws?*

The election of directors was set for January 25, 1967. Nominations were required to be made on or before January 11, 1967. Plaintiff first received notice of the new bylaws on January 6, 1967. Admittedly considerable material had to be collected and compiled as the nominees under the new bylaws.

The bylaws did not forbid "out of time" nominations to be considered. The Chairman of the Board was invested with discretion.

■ Assuming plaintiff's showing that plaintiff decided to proceed with its two nominees, Clark and Tooley and stand or fall on the basis of what happened; and assuming plaintiff could not have secured the consent and necessary information as to other qualified nominees by January 11, 1967, there is still no showing that plaintiff attempted to *secure* the consent of, and *present* nominees qualified under the new bylaws after January 11, 1967, and prior to January 25, 1967, the date of the meeting of the Board of Directors. We cannot presume that such an out of time application would have been denied. No attempt was made to secure this relief.

This is akin to the principle of exhausting administrative remedies. Plaintiff, even assuming its difficulties in securing qualified nominees prior to January 11, 1967, has made no showing of any attempt to secure or present them after January 11, 1967, and prior to January 25, 1967.

There was a *possible remedy* available to plaintiff and even though plaintiff believed prospects of relief were remote, no effort was made to pursue or secure that remedy. In fact, plaintiff admittedly elected to "stand pat" on its nominees and made no effort to pursue or secure an "out of time" nomination.

(c) *The effect of the prior offer to permit plaintiff one non resident director; the threat of "battle" if the offer not accepted; that prior directors were non residents of San Diego county.*

■ Regardless of prior offers, the Board of Directors had the right and power to adopt new bylaws and change their thinking in the matter. If previously, non residents of San Diego county sat on the Board, the new bylaws which excluded non residents were reasonable. Even if the prior offer was not accepted

and plaintiff threatened "battle" the Board could later adopt, and we hold they did adopt, reasonable bylaws, and that they were reasonably applied.

## CONCLUSION

Assuming plaintiff's strongest position and that it could prevail on the fact issues the plaintiff has tendered, we hold that the sole question is the reasonableness of the new bylaws and not *why* or *for what reason* they were adopted; that reasonableness is a question of law and not of fact; that we bypass the possible damage plaintiff suffered or could prove (on which issue we find it difficult to even *imagine* how plaintiff could prove actual or monetary damage); that there is no showing that the reasonable provisions of the bylaws have been applied unreasonably or with discrimination; that there are no issues of fact to be decided and that defendant's motion for summary judgment should be and is hereby granted. Defendant to submit findings as to the undisputed facts, conclusions of law, and judgment, and serve same pursuant to the Rules of the Court. Defendant to have its costs.

## APPENDIX

Section 1.3. *Nominations for Director*. Nominations for election to the Board of Directors may be made by the Board of Directors or by any stockholder of any outstanding class of capital stock of the Bank entitled to vote for the election of directors. Nominations, other than those made by or on behalf of the existing management of the Bank, shall be made by notification in writing delivered or mailed to the President of the Bank and to the Comptroller of the Currency, Washington, D. C., not less than fourteen (14) days or more than fifty (50) days prior to any meeting of stockholders called for the election of directors, provided, however, that if less than twenty-one (21) days' notice of the meeting is given to shareholders, such nomination shall be mailed or delivered to the President of the Bank and to the Comptroller of the Currency not later than the close of business on the seventh day following the day on which the notice of meeting was mailed. Such notification shall contain the following information as to each proposed nominee and as to each person, acting alone or in conjunction with one or more other persons, in making such nomination or in organizing, directing or financing such nomination or solicitation of proxies to vote for the nominee: (a) the name, age, residence address, and business address of each proposed nominee and of each such person; (b) the principal occupation or employment, the name, type of business and address of the corporation or other organization in which such employment is carried on of each proposed nominee and of each such person; (c) if the proposed nominee is an attorney, a statement as to whether or not either he or any attorney or firm with whom he has an office relationship as partner, associate, employee, or otherwise, is an attorney for any banking corporation, affiliate or subsidiary thereof, or bank holding company engaged in business in California; (d) a statement as to each proposed nominee and a statement as to each such person stating whether the nominee or person concerned has been a participant in any proxy contest within the past ten years, and, if so, the statement shall indicate the principals involved, the subject matter of the contest, the outcome thereof, and the relationship of the nominee or person to the principals; (e) the amount of stock of the Bank owned beneficially, directly or indirectly, by each proposed nominee or by members of his family residing with him and the names of the registered owners thereof; (f) the amount of stock of the Bank owned of record but not beneficially by each proposed nominee or by members of his family residing with him and by each such person or by members of his family residing with him and the names of the beneficial owners thereof; (g) if any shares specified in (e) or (f) above were acquired in the last two years, a statement of the dates of acquisition and amounts acquired on each date; (h) a statement showing the extent of any borrowings to purchase shares of the

Bank specified in (e) or (f) above acquired within the preceding two years, and if funds were borrowed otherwise than pursuant to a margin account or bank loan in the regular course of business of a bank, the material provisions of such borrowings and the names of the lenders; (i) the details of any contract, arrangment or understanding relating to the securities of the Bank, to which each proposed nominee or to which each such person is a party, such as joint venture or option arrangements, puts or calls, guaranties against loss, or guaranties of profit or arrangements as to the division of losses or profits or with respect to the giving or withholding of proxies, and the name or names of the persons with whom such contracts, arrangements or understandings exist; (j) the details of any contract, arrangement, or understanding to which each proposed nominee or to which such person is a party with any other banking corporation, affiliate or subsidiary thereof, or bank holding company or with any officer, director, employee, agent, nominee, attorney, or other representative thereof; (k) a description of any arrangement or understanding of each proposed nominee and of each such person with any person regarding future employment or with respect to any future transaction to which the Bank will or may be a party; (l) a statement as to each proposed nominee and a statement as to each such person as to whether or not the nominee or person concerned will bear any part of the expense incurred in any proxy solicitation, and, if so, the amount thereof; (m) a statement as to each proposed nominee and a statement as to each such person describing any conviction for a felony that occurred during the preceding ten years involving the unlawful possession, conversion or appropriation of money or other property, or the payment of taxes; (n) the total number of shares that will be voted for each proposed nominee; and (o) the amount of stock, if any, owned, directly or indirectly, by each proposed nominee or by members of his family residing with him, in any banking corporation, affiliate or subsidiary thereof, or bank holding company, engaged in business in California, other than this Bank. The chairman of the meeting may, in his discretion, determine and declare to the meeting that a nomination not made in accordance with the foregoing procedure shall be disregarded.

Section 2.8. *Qualifications.* No person shall be a member of the Board of Directors (a) who has not been a resident for a period of at least one year immediately prior to his election of a county in which the bank maintains a banking office, or (b) who owns, together with his family residing with him, directly or indirectly, more than one percent of the outstanding shares of any other banking corporation, affiliate or subsidiary thereof, or bank holding company engaged in business in California, or (c) who is a director, officer, employee, agent, nominee, or attorney of any other banking corporation, affiliate or subsidiary thereof, or bank holding company engaged in business in California, or (d) who has or is the nominee of anyone who has any contract, arrangement or understanding with any other banking corporation, or affiliate or subsidiary thereof, or bank holding company or with any officer, director, employee, agent, nominee, attorney or other representative thereof that he will reveal or in any way utilize information obtained as a director or that he will, directly or indirectly, attempt to effect or encourage any action of this Bank, or (e) who is an officer, director, or employee of any corporation or unincorporated association, or is a partner or employee of any partnership, or is an individual, primarily engaged in the issue, flotation, underwriting, public sale, or distribution, at wholesale or retail, or through syndicate participation, of stocks, bonds or other similar securities.